## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MITCHELL E. PIETRYGA,

           CASE NO. 19-11402

    *Plaintiff*,      DISTRICT JUDGE ROBERT H. CLELAND

*v.*           MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 14)

## I. RECOMMENDATION

Plaintiff Mitchell Pietryga challenges Defendant Commissioner of Social Security's final decision denying her claim for Title XVI Supplemental Security Income benefits (SSI). The case was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 14), and **AFFIRMING** the Commissioner's final decision.

## II. REPORT

### A. Introduction and Procedural History

Plaintiff applied for SSI on September 23, 2016, alleging he had become disabled on November 19, 2015. (ECF No. 9 PageID.165.) After the Commissioner initially denied the claim, Plaintiff requested and received a hearing before an administrative law judge

1

(ALJ). (*Id.*, PageID.122, 57-121.) On March 14, 2018, the ALJ issued a decision rejecting Plaintiff's claim. (*Id.*, PageID.42-56.) The Appeals Council declined to review that decision, and Plaintiff subsequently sought judicial review of the agency's action. (*Id.*, PageID.31-34; ECF No. 1.) The parties have exchanged motions for summary judgment, briefing has concluded, and the matter is now ready for resolution. (ECF No. 13, 14, 15.)

### B.  Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

2

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.  Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*,

475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than [twelve]
> months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to

be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement . . . or a combination of impairments that
> is severe and meets the duration requirement, we will find that
> you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of
> your impairment(s). If you have an impairment(s) that meets or
> equals one of our listings in appendix 1 of this subpart and
> meets the duration requirement, we will find that you are
> disabled.
>
> (iv) At the fourth step, we consider our assessment of your
> residual functional capacity and your past relevant work. If you
> can still do your past relevant work, we will find that you are
> not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your

> residual functional capacity and your age, education, and work
> experience to see if you can make an adjustment to other work.
> If you can make an adjustment to other work, we will find that
> you are not disabled. If you cannot make an adjustment to other
> work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.

2001).

"Through step four, the claimant bears the burden of proving the existence and

severity of limitations caused by [his or] her impairments and the fact that [he or] she is

precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis

reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r*

*of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is

required to show that "other jobs in significant numbers exist in the national economy that

[the claimant] could perform given [his or] her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§

416.920(a)(4)(v), (g)). The RFC "is the most [the claimant] can still do despite [his or her]

limitations," and is measured using "all the relevant evidence in [the] case record." 20

C.F.R. § 404.1545(a)(2).

**D.  ALJ Findings**

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since September 16, 2016, the application date. (ECF No. 9,

PageID.47.) At step two, the ALJ concluded that Plaintiff had the following severe

impairments: "autism spectrum disorder, depressive disorder, attention deficit

4

hyperactivity disorder [ADHD], generalized anxiety disorder." (*Id.*) At step three, the ALJ

decided these impairments did not meet or equal a listed impairment. (*Id.*, PageID.48.)

Before proceeding to the final steps, the ALJ found that Plaintiff had the RFC to

perform

> A full range of work at all exertional levels but with the following
> nonexertional limitations: he is limited to simple, routine tasks; making
> simple, work-related decisions in a low stress environment, meaning one with
> few changes and where the work is not at a production rate pace, that is, where
> the production rate is not set by an external source such as an assembly line
> or conveyor belt; he may have occasional interaction with the public and co-
> workers but may not participate in tandem work.

(ECF No. 9, PageID.49.) At step four, the ALJ concluded that Plaintiff had no past relevant

work. (*Id.*, PageID.51.) At step five, the ALJ found that a significant number of jobs existed

nationally that Plaintiff could perform. (*Id.*, PageID.51-52.)

### E. Administrative Record

#### 1. Medical Evidence

I have reviewed the medical records and will discuss them as necessary in the

analysis below.

#### 2. Adult Function Report

Plaintiff's mother completed a function report for his disability benefits application.

(ECF No. 9, PageID.221-228.) She reported that Plaintiff is "very smart in some ways, but

very literal and can't interpret sarcasm, facial expressions, body language or other nuances.

He has trouble calming himself and controlling his emotions when his anxiety gets high.

He also has difficulties with attention and concentration." (ECF No. 9, PageID.221.) She

also indicated that Plaintiff "has very specific and specialized interests and if there is

something outside of his interest, he struggles with it. He requires a lot of support, consistency, and structure to function. He lives with his family and requires our support and help with daily activities." (ECF No. 9, PageID.221.) When asked to describe his day, it was reported that Plaintiff "attends Macomb Community College. Mother drives him to and from MCC. Studies/works on homework, rides his bike." (ECF No. 9, PageID.222.) Plaintiff has no difficulties with personal care, but needs "reminders to comb his hair, make sure his clothes match." (ECF No. 9, PageID.222-223.) Plaintiff prepares his own breakfasts and lunches, such as "frozen food, reheat food, sandwiches, bowl of cereal." (ECF No. 9, PageID.223.) Plaintiff mows the lawn, makes his own bed each day with "reminders" and goes outside on a daily basis. (ECF No. 9, PageID.223-224.) Plaintiff has a learner's permit but does not drive without supervision yet but has no problems walking, riding in a car, or riding a bicycle. (ECF No. 9, PageID.224.) Plaintiff can pay bills, handle a savings account and can use a checkbook but "needs to work on counting change and balancing checkbook." (ECF No. 9, PageID.224.) Plaintiff's hobbies include "fishing, biking, cross country skiing, hunting" and he plays video games and going to the movies with a friend who also has autism. (ECF No. 9, PageID.225.) Plaintiff was also noted to be "very polite." (ECF No. 9, PageID.226.) Plaintiff "gets along pretty well" with others but "can become confused easily if stressed or anxious" noting that "change causes a great deal of stress for [Plaintiff]." (ECF No. 9, PageID.227.)

### 3. Administrative Hearing

At the hearing, Plaintiff testified that he was 20 years old and lived with his mother, his father, and his younger sister. (ECF No. 9, PageID.63.) Plaintiff completed high school

and was attending community college, taking classes in Anthropology and Geology of Michigan. (ECF No. 9, PageID.64.) Plaintiff never worked but continued to do volunteer work with Habitat for Humanity, including "basic caulking" and hanging blinds. (ECF No. 9, PageID.64-65.) When asked whether he needs a lot of direction or has any trouble doing the volunteer work, Plaintiff responded, "Just a little direction like how to perform the task at hand." (ECF No. 9, PageID.66.) Plaintiff indicated that "When I'm asked to do too many things at once, I tend to kind of - - I just kind of tend to screw up…I'm not able to perform effectively and complete the tasks given to me at hand." (ECF No. 9, PageID.66.) When the ALj asked if interruption or multi-tasking were his biggest problems, Plaintiff responded affirmatively. (ECF No. 9, PageID.66-67.) When completing college papers, Plaintiff needs help, i.e. "peer review editing" but Plaintiff does not need help taking notes in class (ECF No. 9, PageID.68-69.)  Plaintiff has a smart phone but does not use social media. (ECF No. 9, PageID.71.) Plaintiff indicated he has "no troubles" with school either in classes or getting around campus. (ECF No. 9, PageID.72.) Plaintiff considers going into History or Geology, others think he would be a great teacher or a great conservationist. (ECF No. 9, PageID.73.)

Plaintiff testified that in his spare time he likes to "cross country and downhill ski", "hunt", "fish", "wind surf", "snorkel", and "scuba dive." (ECF No. 9, PageID.74.) Plaintiff indicated he had difficulty in Chemistry and was very depressed around that time because he had lost his great-grandmother (which was not surprising) but also lost his grandpa (which was surprising). When asked if he came out of it, Plaintiff indicated he "came out of it" and when further asked what helped him, he responded, "I will never quit. I will fight

on until my very last breath no matter how hard things get. If I have to pass it, I'm not quitting. And if I'm not passing, you're going to have to immobilize me somehow to stop me." (ECF No. 9, PageID.75-76.)

Plaintiff's attorney further questioned Plaintiff about the time, in 2015, when he was depressed. Plaintiff "felt like the world was just asking too much of me." (ECF No. 9, PageID.78.) Plaintiff received support from his counselors, teachers, and friends. (ECF No. 9, PageID.78-79.) Plaintiff also saw a counselor, Dr. Field, because he was having suicidal thoughts. (ECF No. 9, PageID.81.) Plaintiff continues to receive some support, extra time for tests, and tutoring once a week, at college. (ECF No. 9, PageID.81.) Plaintiff has a good social life and has a best friend from junior high school named Spencer who is also autistic. (ECF No. 9, PageID.83-84.) Plaintiff mows the lawn, sweeps, vacuums, cleans his room, and cooks things like eggs but also follows recipes for simple foods and uses the stove and the oven. (ECF No. 9, PageID.86-87.) Plaintiff takes "Focalin" for "attention" and Vitamin B for "concentration, energy and prevent depression." (ECF No. 9, PageID.88.) The medicine helps but "isn't always enough" so he estimates it "only works 75 I'd like to say percent of the time." (ECF No. 9, PageID.88.)

Plaintiff's father, Brad Pietryga, testified "I don't think [Plaintiff] could care for himself. I don't think he could procure and make his food. I think he requires a lot of structure and a lot of support." (ECF No. 9, PageID.91.) When asked whether Plaintiff needs supervision to do the tasks he indicated he could do, like cooking, Plaintiff's father responded, "I don't think he's ever done it without someone else in the house." (ECF No. 9, PageID.91.) When asked why someone is in the house, he responded, "We pretty much

are providing support and backup for him all the time." (ECF No. 9, PageID.91.) When asked why Plaintiff had testified that he mows the lawn but that his father wants to be there when he does, Plaintiff's father responded that Plaintiff "can't start the lawn equipment on his own. He can't go through the six-step process to start it." (ECF No. 9, PageID.92.) Plaintiff's father testified that Plaintiff is not yet ready to drive a car because he is too cautious and teaching him is "nerve wracking" just as it had been in teaching Plaintiff to ride a bike. (ECF No. 9, PageID.94-95.) When the ALJ asked how old Plaintiff was when he learned to ride a bike, thinking perhaps it was junior high, Plaintiff's father responded, "probably like in 3rd grade[.]" (ECF No. 9, PageID.95.) When asked if "you gave him a lsit and said this is how you start the lawnmower, could he follow that, one, two, three?", Plaintiff's father responded, "I've never written out a list. I've spoken to him how to do it, and he's not able to do it unless I say now this, now that, now the next thing." (ECF No. 9, PageID.96-97.) Plaintiff's father testified that he helped Plaintiff with his math and Biology classes "coached him, helped him all the way." (ECF No. 9, PageID.99.) The ALJ indicated that the lab work in Biology is coordinated with what has been learned in class and then asked Plaintiff's father if Plaintiff could do the lab work without his help, Plaintiff's father responded, "Yeah, I think he could have done the lab. I don't think he could have passed the class." (ECF No. 9, PageID.100.) When asked what he thought Plaintiff's biggest limitations are for doing work, Plaintiff's father stated, "I think being able to have somebody explain to him what he's supposed to do without physically showing him every step. That needs to be done, and if he's overloaded and he stumbles, I think that the social interaction, he would become stressed and start having a really hard time taking all the

9

information in." (ECF No. 9, PageID.100-101.) Plaintiff would exhibit stress by intertwining and moving his fingers and hands or by rocking back and forth. (ECF No. 9, PageID.101.) Plaintiff understands he has autism and has sometimes been embarrassed by what people say about him but has handled those situations. (ECF No. 9, PageID.103.) Plaintiff's father explained that although Plaintiff is a junior blackbelt, "he started when he was 5, and he finished when he was like 18. Most kids get through that in a few years, not a lifetime." (ECF No. 9, PageID.105.) When Plaintiff worked with his mother at the Salvation Army, his mother was with him and Plaintiff required constant supervision for each step of the work. (ECF No. 9, PageID.106-107.)

> The ALJ then questioned the vocational expert (VE), asking him to

> assume a hypothetical person who has the age, education, and work experience as Mr. Pietryga, who is 20 years old; has a high school education and is attending some college, has no past relevant work. This individual can work at all exertional levels with the following additional limitations. They require simple and routine tasks, making simple work-related decisions in a low-stress environment meaning an environment with few changes, work that is not to be at a production-rate pace, meaning where the production rate is set by an external source, such as an assembly line or conveyor belt, occasional interaction with the public and occasional interaction with coworkers rather than constant and frequent.
> And I'm going to say no tandem tasks.

(ECF No. 9, PageID.113.) Could that person perform jobs in the national economy, the ALJ asked. (*Id.*) Yes, the VE replied: a dishwasher, DOT 318.687-010 (500,000 jobs); sorting jobs, DOT 526.687-010 (220,000 jobs); and inspector, DOT 521.687-094 (100,000 jobs). (ECF No. 9, PageID.113-114.) If supervision were required more than rarely, the jobs would no longer be available. (ECF No. 9, PageID.114.) These jobs also require the worker to be on task 90 percent of the time and absent no more than one day per month.

(ECF No. 9, PageID.114-115.) The VE confirmed that his testimony was consistent with the DOT and SCO with the exception of the question of supervision which is not addressed by these resources. (ECF No. 9, PageID.115.)

### F.  General Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into two categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various

---

[1]  Various regulations were amended after the claim was filed. *See, e.g.*, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). The governing regulations here, however, expressly apply to claims filed before March 27, 2017, like Plaintiff's. See 20 C.F.R. § 404.1527.

decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment

meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016) and 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20 C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR) 16-3p, 2016 WL 1119029, at *5; SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

14

    (i)    [D]aily activities;

    (ii)   The location, duration, frequency, and intensity of . . . pain;

    (iii)  Precipitating and aggravating factors;

    (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)   Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR) 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.  Analysis

Plaintiff makes three arguments: (1) the "ALJ erred by not weighing the hearing testimony of Pietryga's father"; (2) the "ALJ failed to weigh the eligibility determination opinion of the vocational counselor Christol James, who completed this assessment for Michigan Rehabilitation Services (MRS)"; and (3) the "ALJ failed to provide good reasons for only affording limited weight to the medical opinion of Dr. James Gall, Pietryga's former treating psychologist." (ECF No. 13, PageID.400.) Plaintiff makes a fourth argument in the text of his brief that the ALJ mischaracterized the evidence of record. (ECF No. 13, Page.ID.420-423.)

### 1.  Plaintiff's father's testimony

Plaintiff contends that his father's testimony establishes that Plaintiff needs constant supervision and although "the ALJ briefly summarized some of Pietryga's father's testimony in her decision, [she] failed to weigh the testimony at all." (ECF No. 13,

PageID.412.) Plaintiff further argues that even lay witness testimony should not be disregarded "without comment" and that such error was not harmless where, if credited, "a disability finding would have been warranted." (ECF No. 13, PageID.412-413.) Defendant counters that the ALJ considered Plaintiff's father's testimony and provided sufficient reasons for finding his testimony unsupported by the record. (ECF No. 14, PageID.435.) In addition, even if the ALJ failed to assign specific weight to the testimony, Defendant argues that such an error would be harmless. (ECF No. 14, PageID.435-436.)

The ALJ succinctly summarized Plaintiff's father's testimony that Plaintiff "gets sensory overload when he is stressed out[,]" that he drives Plaintiff to college and helped him register, and that Plaintiff "needs step-by-step instructions" and "cannot do any chores without supervision." (ECF No. 9, PageID.49.)  The ALJ indicated she considered all the evidence and found Plaintiff's impairments could be expected to cause the alleged symptoms but not to the extent alleged by Plaintiff because such intensity, persistence and limiting effects are not consistent with the medical evidence. (ECF No. 9, PageID.49.) The ALJ expressly considered the testimony but did not assign an express amount of weight to the opinion; rather, the ALJ considered his testimony along with Plaintiff's. This was sufficient. Although an ALJ should not "disregard [ ] without comment" a lay witness's testimony, *Maloney v. Comm'r of Soc. Sec.,* 480 F. App'x 804, 810 (6th Cir.2012), failure to comment or assign weight is not necessarily error let alone reversible error. *Simons v. Barnhart,* 114 F. App'x 727, 733 (6th Cir.2004)("testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians."); *Waters v. Astrue,* No. CIV.A. 2:10–213–DCR, 2011 WL 3847421, at *4

(E.D. Ky. Aug.26, 2011)(finding that the ALJ did not err in failing to specifically address lay witness testimony where he stated that he considered the entire record); *Walker v. Astrue,* No. 3:10–CV–542, 2011 WL 6963162, at *11 (E.D. Tenn. Dec.6, 2011) (internal citations omitted)(noting that an ALJ must only assign weight to lay witness testimony when it is supported by a treating physician opinion).

Although Plaintiff contends that, if credited, Plaintiff's father's testimony would warrant an award of benefits, I suggest that at least some of his testimony could just as well be viewed as supporting the ALJ's decision. Although Plaintiff's father indicated Plaintiff needs constant supervision, when asked what he based that conclusion on, he cited Plaintiff's inability to complete the six-step process needed to start the lawn equipment. (ECF No. 9, PageID.92.) However, when the ALJ asked if "you gave him a list and said this is how you start the lawnmower, could he follow that, one, two, three?", Plaintiff's father responded, "I've never written out a list. I've spoken to him how to do it, and he's not able to do it unless I say now this, now that, now the next thing." (ECF No. 9, PageID.96-97.) Plaintiff's father therefore never gave Plaintiff a chance to follow written instructions but rather chose to be near and recite oral instructions one step at a time but this does not equate to a conclusion that Plaintiff would be incapable of performing the task without supervision. He might be able to perform the task if given written instructions, but this record does not answer that question. When asked to reconcile Plaintiff's testimony that he cooks with Plaintiff's father's testimony that he needs someone in the house to do so, Plaintiff's father responded, "I don't think he's ever done it without someone else in

17

the house." (ECF No. 9, PageID.91.) When asked why someone is in the house, he responded, "We pretty much are providing support and backup for him all the time." (ECF No. 9, PageID.91.) The fact that someone *is* always in the house does not necessarily require a conclusion that someone *needs* to be in the house in order for Plaintiff to do daily activities, such as cooking.

Accordingly, I suggest that if the ALJ committed any error as to Plaintiff's father's testimony, it was harmless.

### 2.  Vocational counselor James's opinion

Plaintiff contends that "[t]hough the decision very briefly mentions some other records from MRS, the ALJ's decision does not mention, discuss, or even weigh the assessment from Ms. James." (ECF No. 13, PageID.415.) Defendant counters that "the ALJ's decision clearly acknowledged that Ms. James determined that Plaintiff was eligible to receive assistance from MRS (Tr. 19-20), as this was the only MRS eligibility determination in the record." (ECF No. 14, PageID.440.) Defendant further contends that Plaintiff "does not state how Ms. James' assessment runs contrary to the VE's testimony relied on (Tr. 21, citing Tr. 89-89) or indicates greater limitation than those provided in the RFC that would result in a finding of disability precluding any gainful employment – as was his burden." (ECF No. 14, PageID.441.)

In crafting an Individualized Plan for Employment, Ms. Jones noted that Plaintiff was diagnosed with Autism Spectrum Disorder and that he "struggles with receptive and expressive language pragmatics." (ECF No. 14, PageID.362.) She opines that "[t]his will present challenges on the job with expressing his job-related needs and understanding

18

directions and employer expectations." (*Id.*) In addition, she noted "difficulty accurately reading body language and understanding abstract concepts" "compromised by Processing Speed deficit that will result in directions needing to be repeated" and difficulty in "remember[ing] elements of job tasks over extended periods of time due to Long Term Retrieval deficiency." (ECF No. 14, PageID.362.) Ms. James indicated that these "[d]eterminations were drawn from Utica Schools…acknowledged by psychologist Arny Rea." (ECF No. 14, PageID.362.)

Nonetheless, Ms. James also "determined that [Plaintiff] requires and can benefit from VR services to prepare for, enter into, engage in, or retain gainful employment." (ECF No. 14, PageID.363.) The plan included vocational "exploration" services to guide Plaintiff 'as to what employment are to pursue within the context of his aptitudes and interests" and "[f]ollow up services [that] will ensure long term employment by monitoring potential problems and provide immediate solutions so employment can be maintained." (ECF No. 14, PageID.363.)

The ALJ's only reference to the MRS evidence is to note that Plaintiff had a driver's license "in spite of his deficits in language and processing speed[,] that he "had no physical limitations, and enjoyed wind surfing, hunting, fishing, biking, and cross-country skiing" and "was eligible to develop an individualized plan for employment, but his case was closed in April 2017 when he did not respond to attempts to contact him." (ECF No. 14, PageID.361-362.) Although the mention was short, it indicates that the ALJ did take the vocational evidence into consideration. 20 C.F.R. § 416.927(c) does not require the ALJ to do more unless "such opinions may have an effect on the outcome of the case" at which

time the ALJ "generally should" provide reasons for the treatment of the nonmedical opinion. I suggest that Ms. James' opinion did not have any effect on the outcome of the case; thus, the ALJ did not err in failing to provide reasons for the treatment given. First, the ALJ did not spend much time discussing it. Second, it is unclear how Ms. James' assessment helps Plaintiff argue he is disabled, especially where, despite his noted deficits, Ms. James was of the opinion that Plaintiff could be employed for the "long term[.]" (ECF No. 14, PageID.363.) Therefore, I find that the ALJ did not err in her treatment of Ms. James' opinion and even if she did, any error was harmless.

### 3. Dr. Gall's Treating-Psychologist Opinion

Plaintiff notes that Dr. Gall "opined that, although [Plaintiff] seemed to function well in a 'highly structured and supported environment', 'his functioning would most certainly decline if required to sustain competitive employment on a full-time basis.'" (ECF No. 13, PageID.416.) Plaintiff argues that the "ALJ afforded only little weight to the opinion of Dr. Gall, but failed to provide 'good reasons' for doing so." (*Id.*) Defendant contends that the ALJ adequately provided good reasons for giving Dr. Gall's opinion little weight. (ECF No. 14, PageID.442.)

The ALJ afforded Dr. Gall's opinion "little weight" because: (1) Dr. Gall's conclusion that Plaintiff "would not be able to adjust to a competitive work atmosphere" was "purely speculative, as it is not verified by the clinical findings, which were consistently benign"; (2) Dr. Gall's opinion statements "appear to have been generated in an effort to bolster the claimant's case; they are not part of the actual treatment record" and (3) Dr. Gall's opinion is inconsistent with record evidence that Plaintiff "is very active with

20

numerous daily living activities and hobbies, he functions at college and socially independently." (ECF No. 9, PageID.50.)

It should be noted, at the outset, that the ALJ did incorporate some limitations based on Dr. Gall's opinion such as a limitation to simple and routine tasks, making simple work-related decisions in a low-stress environment meaning an environment with few changes, work that is not to be at a production-rate pace, and only occasional interaction with the public and occasional interaction with coworkers rather than constant and frequent, and no tandem tasks. (ECF No. 9, PageID.113.)

Dr. Gall's first opinion was in the form of a Mental Residual Functional Capacity Assessment dated February 6, 2018. (ECF No. 9, PageID.371-374.) Dr. Gall indicated that he had treated Plaintiff since February 2017 and he opined that Plaintiff had no limitations as to the ability to remember locations and work-like procedures, the ability to understand and remember very short and simple locations, and mild limitation, 1-2 steps, as to the ability to understand and remember detailed instructions. (ECF No. 9, PageID.371-372.) As to sustained concentration and persistence, Dr. Gall opined that when on medication, Plaintiff had only mild to moderate limitations in the abilities to carry out very short and simple instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and only mild limitation as to the ability to sustain an ordinary routine without special supervision, the ability to work in coordination or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without

21

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (ECF No. 9, PageID.372-373.) As to social interaction, Dr. Gall opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public, mildly limited in the ability to ask simple questions and request assistance, and had no limitations in the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (ECF No. 9, PageID.373.) As to adaptation, Dr. Gall concluded Plaintiff was moderately limited in his ability to respond appropriately in the work setting, had no limitations in the ability to be aware of normal hazards and take appropriate precautions, no limitations in the ability to travel to unfamiliar places or use public transportation, markedly limited in the ability to set realistic goals or make plans independently of others and extremely limited in the ability to tolerate normal levels of stress. (ECF No. 9, PageID.373-374.)

One week later, Dr. Gall wrote to "expand on my previously submitted evaluation[.]" (ECF No. 9, PageID.388.) In this letter, he stated:

> At present, [Plaintiff] appears able to function fairly well in a highly structured and supported environment (i.e., he resides with his parents and received academic accommodations in college.) Without such structure and support, his functioning would most certainly decline if required to sustain competitive employment on a full-time basis. [Plaintiff's] psychiatric condition(s) interferes with his ability to adequately adapt to normal stress, adjust to situational demands, understand and respond to social cues, as well as demonstrate sustained attention and problem solving towards a stated goal. Such behaviors are all impediments to successful competitive employment. I do not believe, based on clinical evidence, that

[Plaintiff] is able to function in a competitive work environment without additional support and accommodations.

(ECF No. 9, PageID.388.)

Although Plaintiff contends that the ALJ improperly concluded that Dr. Gall's opinion was made in an effort to bolster Plaintiff's disability claim, I suggest that such a conclusion is neither irrational nor improper. The limitations specifically noted in Dr. Galls' mental RFC were very mild and would not support a finding of disability. The fact that Dr. Gall's letter was authored only one week after the RFC assessment and that the letter concluded that Plaintiff could not perform in a work environment without support certainly raises a proper question as to what prompted the change of opinion in only one week's time. I therefore suggest that the ALJ did not err in questioning Dr. Gall's turnabout.

I further find that the ALJ's conclusion that Dr. Gall's opinion letter is inconsistent with his treatment notes is supported by substantial evidence. Treatment notes from Dr. Gall on February 28, 2017 indicated that Plaintiff "denied experiencing any problems in school and denied additional schooling outside the classroom. The patient's highest level of education is some college." (ECF No. 9, PageID.317.) Dr. Gall also noted Plaintiff had normal psychomotor activity, displayed a normal rate, amplitude and prosody of speech, his mood was euthymic, affect was mood congruent, normal range and modulation, his thought process was goal directed, no abnormal thought content, his insight/judgment was intact, he was alert and oriented, his recent and remote memory were both intact, his attention and language was intact and his fund of knowledge was excellent. (ECF No. 9,

PageID.317.) The same normal findings were made in March, April, and May, 2017. (ECF No. 9, PageID.320-321, 322-323, 324-325, 326-327, 329.)

I therefore conclude that the ALJ's treatment of Dr. Gall's opinion is not erroneous and is supported by substantial evidence of record.

### 4. Mischaracterization of Evidence

Here, Plaintiff argues that the "ALJ's failure to weight [Plaintiff's] father's testimony led to a mischaracterization of the record in general, in that the ALJ accepted [Plaintiff's] reports of abilities at face value without also considering the testimony of [Plaintiff's] father." (ECF No. 13, PageID.421.) The specific manner in which the ALJ considered Plaintiff's father testimony has been addressed above. Plaintiff's further argument that this colored the ALJ's view of all the evidence and caused her to mischaracterize evidence is, I suggest, without any support in the record.

Plaintiff posits that the ALJ found Plaintiff had a driver's license when he only had a learner's permit and that he did not consider the functional assessment completed by Plaintiff's mother. (ECF No. 13, PageID.421-422.)  As to the driver's license issues, when summarizing Plaintiff's father's testimony, the ALJ noted that Plaintiff's father drives Plaintiff to college. (ECF No. 9, PageID.49.)  The ALJ's reference to a driver's license, rather than a graduated license or permit was made in reference to her evaluation of the MRS evidence. (ECF No. 9, PageID.49-50, 361-362.) To the extent that a graduated license or permit is notably different from a driver's license for purposes of assessing skills, I find this small error to be harmless. Plaintiff's contention that the ALJ failed to consider the function report completed by Plaintiff's mother, the fact that the ALJ did not mention the

24

report does not mean she did not consider it. The ALJ indicated she considered all the evidence. (ECF No. 9, PageID.49.) An "ALJ can consider all the evidence without directly addressing in the written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006). I therefore find that these issues do not undermine the conclusion that the ALJ's decision is supported by substantial evidence.

### H. Conclusion

For these reasons, I conclude that substantial evidence supports the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 14), and **AFFIRMING** the Commissioner's final decision denying benefits.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d

25

390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 14, 2020                  S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                  United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 14, 2020                   By s/Kristen Castaneda
                                                Case Manager